IN RE INTEREST OF C.L.F., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. R.F., APPELLANT.

344 N.W.2d 674

Filed February 24, 1984. No. 83-585.

Bruce H. Abrahamson and Timothy L. Korb of Gunderson, Abrahamson & Grewe, for appellant.

Donald L. Knowles, Douglas County Attorney, and Douglas D. Grieser, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The separate juvenile court ordered the termination of the parental rights of the mother of C.L.F., a female child born on December 12, 1982. The mother, 19 years old on the date of her child's birth, is apparently unmarried. Although counsel appearing for the mother in this court indicates that his client has never contacted him, he has perfected this appeal for her.

The Douglas County Child Protective Services received a referral on C.L.F. on December 15, 1982, which alleged that the mother was unable to take care of the child upon her release from the hospital. The first contact with the mother was made on December 21 at her home, where she was found to be sniffing paint and in a state of intoxication.

Since January 18, 1983, the Douglas County Welfare Administration has had 16 direct contacts with the mother. Eight of those contacts were home visits, on the first of which, February 14, the mother appeared to be under the influence of drugs. Following that date, she was apparently free of such influence for four visits. However, on the sixth visit, May 24, which was arranged because of the concern of a boyfriend of the mother, she was found to be openly sniffing paint, and was incoherent, staggering, slobbering, and emaciated.

Through the intervention of the county attorney and the board of mental health, the mother was admitted to the Douglas County Hospital. As part of her probation, arising out of a sentence of probation from the Omaha Municipal Court, she was then admitted to the Nova Therapeutic Community on June 2, 1983, but as of June 8 she left that facility without explanation, and appparently efforts by the case-

worker to locate her have been unavailing.

The mother's criminal record indicates that between May 4, 1982, and May 7, 1983, she was convicted of 10 counts of using a toxic inhalant and was sentenced to a total of 365 days' imprisonment, and she apparently served 169 days in the Douglas County Correctional Center.

According to a report of a Nebraska Children's Home Society caseworker, the child, C.L.F., at the time of her release from the hospital and placement in foster care, had a great deal of seizure activity, which indicated neurological damage either as a result of birth trauma or caused in utero prior to her birth. She had little use of her arms or legs, almost no head control, and experienced considerable difficulty feeding, as she did a lot of gagging. Reports from the neurologist caring for C.L.F. during the months of March, April, and May 1983 indicated diffuse hypotonia, developmental delay in the realm of motor activity, and seizures. She did seem to show some progress in what the physician called a present excellent home situation.

The initial hearing in this matter, a detention hearing, was held on January 13, 1983, at which the mother did not appear, although service was made at her last known address. An order of detention was made, and an adjudication hearing was set for March 1, 1983. The mother apparently was in the vicinity of the courtroom at approximately 12:30 p.m. on that date, but left before the hearing commenced. This hearing was continued to May 24, 1983, at which the mother did not appear, although she had been served with summons.

Based on the evidence at this latter hearing, the trial court found that C.L.F. is a child within the meaning of Neb. Rev. Stat. §§ 43-247(3)(a) and 43-292(2) (Cum. Supp. 1982), and ordered that the issue of determination of parental rights be taken under advisement pending a dispositional hearing.

The dispositional hearing was held on June 29,

1983, at which evidence in the form of written reports from various welfare agencies and the neurologist, as set out above, was received. Again, the mother failed to appear, although summons was served upon her to appear at that hearing. Following that hearing, an order terminating the parental rights of the mother was entered by the court.

The appellant's only assignment of error is that the court erred in finding that she has substantially and continuously or repeatedly neglected her child and refused to give the child necessary parental care and protection within the meaning of § 43-292(2). Her strongest argument seems to be that the period of time between the birth of the child and the parental termination was so brief that a proper program of rehabilitation was never implemented. However, as she herself concedes, there is no requirement that the court must implement a rehabilitation plan for the parent of a child found to be dependent and neglected.

On a de novo review of this record, it is abundantly clear that this child, who suffers extreme medical problems, possibly due to her mother's abuse of toxic inhalants, will never receive the necessary treatment and care from this same person who not only refuses to change her personal habits but, by her failure to attend any of the court sessions, has displayed a total lack of concern for the welfare of this child. The evidence is clear and convincing that the parental rights should be terminated in this case and that the best interests of the child require that it be done immediately.

The judgment of the separate juvenile court was correct and is affirmed.

AFFIRMED.